UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BLAS MORALES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:16-cv-00977 |
| ) | Judge Trauger/Brown |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

To: The Honorable Aleta A. Trauger, United States District Judge

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's denial of his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. For the following reasons, the Magistrate Judge **RECOMMENDS** that *Plaintiff's Motion for Judgment on the Administrative Record* (Doc. 14) be **DENIED** and the Commissioner's decision be **AFFIRMED**.

### I. PROCEDURAL HISTORY

This is Plaintiff's second application for disability benefits. (AR, p. 66).[1] His current applications were denied initially and on reconsideration. (*Id.* at 65-126, 130-131, 142, 191-206). An administrative hearing was convened on August 19, 2014. (*Id.* at 33-63). The administrative law judge ("ALJ") issued an unfavorable decision on November 7, 2014. (*Id.* at 13-32). The Appeals Council declined to review the ALJ's decision. (*Id.* at 1-6). Plaintiff appealed the Commissioner's decision to this Court. (Doc. 1). The matter was referred to the Magistrate

---

[1] Citations to the administrative record ("AR") (Doc. 12) are to the Bates stamp at the lower right corner of the page.

1

Judge. (Doc. 18). Presently pending is the fully briefed *Plaintiff's Motion for Judgment on the Administrative Record*. (Docs. 14, 15, 16, 17).

## II. REVIEW OF THE RECORD

### A. Medical Records

#### 1. Saint Thomas Health Services

Plaintiff presented to Saint Thomas Health Services on October 22, 2010, for alcohol abuse assistance. (AR, p. 333). He reported depression, dizziness, loss of sleep, numbness, muscle problems in his feet and legs, stomach pain, bleeding gums, blurred vision, nosebleeds, a breast lump, alcoholism, and drug use. (*Id.* at 335-336). On January 20, 2011, Plaintiff complained of shortness of breath and asked for help with alcohol withdrawal. (*Id.* at 331). He was assessed with alcohol abuse, GERD, and COPD. (*Id.*).

#### 2. Summit Medical Center

Plaintiff was admitted to the Summit Medical Center emergency room on November 15, 2010, for alcohol withdrawal with seizures, a shoulder contusion, and pancreatitis. (*Id.* at 272). He was later admitted for alcohol withdrawal on March 14, 2014, abdominal pain on May 11, 2014, and alcohol withdrawal on May 13, 2014. (*Id.* at 663, 685, 699). An abdominal ultrasound on May 12, 2014, showed moderately echogenic portions of the liver compatible with fatty infiltration. (*Id.* at 678). A chest x-ray that same day showed mild degenerative changes in the mid and lower spine and no acute cardiopulmonary process. (*Id.* at 680). During Plaintiff's May 13, 2014, visit, Plaintiff stated he was unable to walk, but when his doctor said he would most likely be discharged the next day, he sat up and stood without any problems. (*Id.* at 663). When discharged, he was alert and oriented, had a full range of motion in his extremities, ambulated independently, had a steady gate, had no weakness or joint pain, and had intact sensation. (*Id.* at

692, 704). His mood and affect were appropriate, and he had no recent limitation in performance of activities of daily living. (*Id.* at 692-693, 704).

### 3. SunCrest Home Health

From November 2010 to December 2010, Plaintiff received at-home physical and occupational therapy from SunCrest Home Health for muscle weakness, gait abnormality, history of falls, chronic pancreatitis, and alcoholic Hepatitis. (*Id.* at 273-328). When he was discharged from physical therapy, he was at a moderate risk of falling with no recent falls, and his strength and range of motion were within functional limits. (*Id.* at 284). He was discharged from occupational therapy having increased his endurance to within functional limits and achieving the ability to perform activities of self-care with minimal assistance. (*Id.* at 298).

### 4. Nashville General Hospital

Plaintiff presented to the Nashville General Hospital emergency department on October 9, 2011, complaining about an alcohol problem. (*Id.* at 365). He was ambulatory and displayed normal mental and neurologic abilities. (*Id.* at 366). Physical examination revealed no neurologic deficits, full range of motion in all extremities without edema, and normal mood and affect with anxiety. (*Id.* at 367). Primary diagnosis included asthma, alcoholism, nervousness, and moderate elevation of systolic blood pressure. (*Id.*).

On April 3, 2012, Plaintiff complained of numbness in his feet for the past three years and reported pain in his feet and lower back. (*Id.* at 371, 373). He was diagnosed with affective disorder and sensory neuropathy related to alcohol consumption. (*Id.* at 372). A nerve conduction study on July 31, 2012, was suggestive of polyneuropathy. (*Id.* at 382).

In an outpatient physical therapy evaluation on August 16, 2012, Plaintiff complained of numbness in his feet beginning in 2003 or 2004. (*Id.* at 386). He was oriented and able to follow

directions. (*Id.* at 387). The active range of motion of his back, arms, and legs was within functional limits except for reduced motion in his ankles. (*Id.*). His hip and knee strength were fair to good, and his ankle strength was poor. (*Id.*). Plaintiff reported he could ambulate up and down a flight of stairs and down a ramp. (*Id.* at 388). He was also independent while performing extreme and prolonged standing. (*Id.* at 389).

On July 7, 2014, Plaintiff complained of weakness when trying to stand up and numbness and coldness in his left leg which was exacerbated by standing and alleviated by sitting. (*Id.* at 715). A July 16, 2014, MRI of Plaintiff's lumbar spine showed mild multilevel disc bulge and facet arthropathy, no central spinal canal stenosis, and mild neuroforaminal narrowing at L3-L4, L4-L5, and L5-S1. (*Id.* at 712). A MRI of Plaintiff's thoracic spine showed mild multilevel degenerative disc disease without cord compression or significant central spinal canal stenosis. (*Id.* at 714).

### 5. United Neighborhood Health Services/Downtown Clinic

From 2011 to 2014, Plaintiff received care from a series of providers at United Neighborhood Health Services, including from Morgan McDonald, M.D, and Jennifer Strickland, LPC-MHSP.[2] (*Id.* at 396-456, 511-530, 537-542, 549-656).

Plaintiff's records reveal an inconsistent variety of symptoms and functional limitations. Plaintiff complained of back and joint pain, muscle weakness, gait disturbance, numbness and decreased sensation in his foot and ankle, anxiety, depression, and difficulty concentrating. (*Id.* at 398, 401, 403, 406, 416-417, 422, 424, 426, 444, 454-455, 519, 522, 529, 537, 559, 584, 589, 592, 601, 611-612, 616, 631, 644, 649, 651, 655). Records also show no back or neck pain, no muscle weakness, normal gait, normal range of motion, muscle strength, and stability in all extremities with no pain, full orientation, appropriate mood and affect, no numbness, no anxiety

---
[2] Licensed Psychological Counselor-Mental Health Services Provider

or depression, and normal ability to concentrate and maintain attention span. (*Id.* at 398-399, 403-404, 406-407, 416-417, 420, 425, 435-436, 439, 455, 519, 529, 589, 605).

With respect to his exertional abilities, Plaintiff reported a moderate activity level and that he exercised by walking two to three times a week. (*Id.* at 443). In December 2012, Plaintiff stated he was helping his mother fix up her house. (*Id.* at 527). He reported using Albuterol when he went out on walks and that he was exercising more in December 2013. (*Id.* at 555). On January 2, 2014, Plaintiff reported he was collecting cans for exercise but had difficulty due to neuropathy in his leg. (*Id.* at 549). He also reported worsening asthma with weather changes and that he was using Albuterol more while moving furniture for his brother. (*Id.*).

### 6. Southern Hills Medical Center

Plaintiff presented to Southern Hills Medical Center on July 15, 2012, complaining of a seizure. (*Id.* at 340). Physical examination of Plaintiff revealed normal findings, including normal range of motion and normal neurological and psychological findings. (*Id.* at 341). A CT of his head was unremarkable. (*Id.* at 349).

### B. Opinion Evidence

In a function report dated October 5, 2012, Plaintiff stated he needs reminders to take his medicine, he prepares frozen meals, and he does not perform house and yard work by choice. (*Id.* at 236-237). He goes grocery shopping but rarely stays out for two hours. (*Id.* at 237). His hobby consists of watching television. (*Id.* at 238). He reported trouble lifting, squatting, bending, standing, walking, sitting, kneeling, and understanding. (*Id.* at 239). He stated he can walk a quarter of a mile before needing a five to ten minute break. (*Id.*). He can pay attention for three minutes, he does not finish what he starts, and he follows written instructions. (*Id.*).

Scott Greene, M.D., completed a consultative examination on November 3, 2012. (*Id.* at 464). A pulmonary function report showed mild restrictive ventilator defect. (*Id.* at 459). Physical examination revealed Plaintiff was alert and oriented and displayed normal intellectual functioning, gait, station, and ability to grasp and manipulate objects. (*Id.* at 466). He could get up out of a chair and get on and off the examining table without difficulty. (*Id.*). Plaintiff had full strength in all major muscle groups, and he displayed a normal range of motion in his spine, shoulders, elbows, wrists, hips, knees, and ankles. (*Id.* at 467-469). Neurologic testing was negative. (*Id.* at 469-470). Dr. Greene diagnosed Plaintiff with neuropathy per patient but found his bilateral sensation intact, he could ambulate without difficulty, and his motor function and range of motion were intact. (*Id.* at 470). Dr. Greene concluded Plaintiff had no impairment-related physical limitations. (*Id.*).

Deborah Doineau, Ed.D., performed a consultative psychological evaluation on November 6, 2012. (*Id.* at 472). During the appointment, Plaintiff ambulated without assistance. (*Id.*). Plaintiff's reported activities of daily living consisted of getting up around 8:30 in the morning, watching television all day, occasionally helping his mother with the dishes, cleaning his own laundry, fixing food in the microwave, grocery shopping, and going to bed around 1 or 2 in the morning. (*Id.* at 476). Dr. Doineau found Plaintiff uncooperative during parts of the assessment and observed that Plaintiff provided information that was contradicted by his medical records. (*Id.* at 472, 475, 477). At the conclusion of the evaluation, Dr. Doineau assessed moderate social limitations and mild limitations in understanding or remembering, sustaining concentration or pace, and adaptability. (*Id.* at 477).

On December 14, 2012, state agency examiner Larry Caldwell, M.D., opined Plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk for six

hours in an eight-hour workday, sit six hours in an eight-hour workday, push and pull without additional limits, and occasionally climb ramps and stairs, climb ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl. (*Id.* at 73, 85). Plaintiff must avoid even moderate exposure to hazards and avoid concentrated exposure to extreme cold, extreme heat, and fumes odors, dusts, gases, poor ventilation, and etc. (*Id.* at 73-74, 85-86). On reconsideration, Frank Pennington, M.D., found this same physical residual functional capacity ("RFC"). (*Id.* at 101-102, 118-119).

B. Kathryn Galbraith, Ph.D., performed a consultative psychological evaluation on February 28, 2013. (*Id.* at 532). Plaintiff displayed a normal gait. (*Id.* at 533). Dr. Galbraith found Plaintiff could follow written and spoken instructions, was mildly impaired in long-term memory and remote memory functioning, and was moderately impaired in short-term memory, ability to sustain concentration, social relating, and adaptability to change. (*Id.* at 536). Dr. Galbraith opined Plaintiff was malingering. (*Id.*).

On March 13, 2013, state agency examiner Dorothy Tucker, Ph.D., evaluated Plaintiff's mental limitations. (*Id.* at 99, 116). Plaintiff had moderate restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, and pace. (*Id.* at 98, 115). Dr. Tucker opined Plaintiff could understand and remember for simple and low-level detailed tasks, sustain concentration and persistence for such tasks with customary breaks, interact infrequently with others, set goals on a limited basis, and adapt to infrequent change. (*Id.* at 105, 122).

Dr. McDonald submitted a medical source statement dated October 16, 2013. (*Id.* at 546-548). As a result of leg numbness and weakness, Dr. McDonald opined Plaintiff could occasionally lift and carry twenty pounds, frequently lift and carry less than ten pounds, stand

7

and walk less than two hours in an eight-hour day, sit two hours in an eight-hour day, sit for twenty minutes at a time, stand for ten minutes at a time,³ must walk around for five minutes every twenty minutes, needs a sit/stand option, and did not need to lie down at unpredictable intervals during an eight-hour day. (*Id.* at 546). Due to back spasms and leg weakness and numbness, Plaintiff could frequently twist, never climb ladders, and occasionally stoop, crouch, and climb stairs. (*Id.* at 547). Plaintiff must avoid even moderate exposure to extreme heat, avoid concentrated exposure to high humidity, and avoid all exposure to other environmental risks because they worsen his asthma. (*Id.*). Dr. McDonald anticipated Plaintiff would be absent from work about four days per month and opined these limitations began over five years ago. (*Id.* at 548).

LPC Strickland submitted a letter on Plaintiff's behalf on July 18, 2014. (*Id.* at 729). LPC Strickland had treated Plaintiff weekly or bi-weekly since March 2013 for acute and severe depression, hopelessness, and suicidal ideation. (*Id.*). LPC Strickland stated, "It appears that the mental health symptoms have a significant impact on the daily functioning for [Plaintiff], including his ability to concentrate, complete simple tasks, etc. [Plaintiff] has been sober from alcohol use for many months and his mental health symptoms persist." (*Id.*).

**C.    The Administrative Hearing**

During the administrative hearing, Plaintiff amended his alleged onset date of disability to October 27, 2011. (*Id.* at 41). When asked why he did not use his cooking skills from prior employment to get a job, Plaintiff stated he cannot work with coworkers anymore because he has "been betrayed by coworkers in the past." (*Id.* at 47). Plaintiff said he cannot stand for more than twenty to twenty-five minutes before his back hurts and his feet and legs go numb. (*Id.* at 49). He can sit for thirty to thirty-five minutes, and he can only walk a block before his back hurts and he

---

³ Plaintiff reported this ten-minute standing/walking limitation to Dr. McDonald. (*Id.* at 577).

needs his inhaler. (*Id.* at 49-50). He did not believe he could alternate standing twenty to twenty-five minutes and sitting thirty to thirty-five minutes for eight hours a day. (*Id.* at 50). During the day, he said he lies down every two hours. (*Id.*). He additionally alleged trouble concentrating and staying focused. (*Id.* at 51).

The ALJ presented the vocational expert with several hypotheticals. (*Id.* at 54-58). Based on the hypothetical ultimately selected by the ALJ, other work would be available. (*Id.* at 56-57). No work would be available if Plaintiff missed four days of work a month. (*Id.* at 58). Work would also be precluded if the individual would be off-task twenty percent of the workday excluding regularly scheduled breaks. (*Id.*).

**D.     The ALJ's Findings**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since October 27, 2011, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: hepatitis C, neuropathy, alcohol/ETOH abuse, chronic kidney disease, major depressive disorder, cannabis abuse, anxiety, and diabetes mellitus (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can occasionally balance, stoop, kneel, crouch, or crawl, and occasionally climb ramps and stairs. He must not climb ladders, ropes, or scaffolds. For any given eight-hour workday, he can stand and/or walk for four hours. He can have no concentrated exposure to temperature extremes, dusts, fumes, odors, gases, or poor ventilation. He cannot work at unprotected heights or around unguarded moving machinery. As for mental limitations, he can perform simple, routine, repetitive tasks, and lower level detailed tasks, but not making

9

executive level decisions. He can have occasional interaction with coworkers, supervisors, and the general public. He can tolerate infrequent work place changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was . . . 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 27, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*Id.* at 18-27) (emphasis omitted).

### III. CONCLUSIONS OF LAW

**A. Standard of Review**

When presented with an appeal of the Commissioner's final disability decision, this Court's review is limited to determining whether the decision is supported by substantial evidence and whether the decision was made using the correct legal standards. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). "Substantial evidence requires 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). Failure to comply with procedural rules may result in a finding that the opinion

lacks substantial evidence. *Id.* (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

## B. Administrative Proceedings

Disability, within the meaning of the Social Security Act, is evaluated in five distinct steps. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant is not disabled if he is engaged in substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant is not disabled if he does not have a severe medically determinable impairment that meets duration requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant is presumed disabled if he suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Fourth, the claimant is not disabled if, based on his RFC, he can perform past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the claimant is not disabled if he can perform other work based on his RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The burden of proof rests on the claimant for the first four steps, and the burden shifts to the Commissioner at the fifth step. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## IV. CLAIMS OF ERROR

Plaintiff brings four claims of error: the ALJ erred by failing to find additional severe impairments; the ALJ should have given greater weight to Dr. McDonald's medical source statement; the ALJ erred by failing to weigh LPC Strickland's opinion; and the ALJ should have performed a function-by-function assessment. (Doc. 15). None of these claims requires reversal.

## V. ANALYSIS

**A. Severe Impairments**

Plaintiff first argues the ALJ made a substantive error by failing to include hypertension, COPD, and chronic polyneuropathy in Plaintiff's list of severe impairments at step two of the disability evaluation. (*Id.* at 5-7). Plaintiff contends this means the ALJ did not consider the effect of these impairments on Plaintiff's RFC. (*Id.* at 6-7). Additionally, Plaintiff contends the ALJ violated SSR 02-1p by failing to state the effects of Plaintiff's obesity on his RFC. (*Id.* at 7).

Because the ALJ found Plaintiff suffered from severe impairments—hepatitis C, neuropathy, alcohol/ETOH abuse, chronic kidney disease, major depressive disorder, cannabis abuse, anxiety, and diabetes mellitus—any failure to include additional severe impairments is "legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *see also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 634 (6th Cir. 2016). So long as the ALJ found a single severe impairment, the disability application could proceed to subsequent steps where both severe and non-severe impairments were considered. From the written decision, it is evident the ALJ considered Plaintiff's severe and non-severe impairments to determine Plaintiff's RFC. (AR, pp. 21-25). This claim of error has no merit.

Similarly, the written opinion shows the ALJ considered Plaintiff's obesity and that none of the medical opinions in the record attributed any limitations to obesity. (*Id.*). From Plaintiff's brief, it is not apparent what impact he believes his obesity has on his RFC. Plaintiff states, "Since the ALJ did not specifically consider the effects of the Plaintiff's obesity and since she did not specifically state the effects of the impairment on the RFC, the ALJ violated SSR 02-1p." (Doc. 15, p. 7). Notwithstanding the fact that the record does not indicate any obesity-related

limitations, this undeveloped argument is waived. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)); *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006); *Lyons v. Astrue*, No. 3:10-CV-502, 2012 WL 529587, at *4 (E.D. Tenn. Feb. 17, 2012) ("[A] diagnosis or notation of obesity does not, by itself, establish the condition's severity or its effect on a plaintiff's functional limitations. Furthermore plaintiff has not offered any evidence or argument, either in her objection or her initial motion, that a restriction resulting from her obesity required greater limitations than those found by the ALJ in his RFC determination."). This claim is meritless.

## B. Treating Physician

Plaintiff next claims the ALJ improperly gave little weight to the medical source statement submitted by his treating physician, Dr. McDonald, and that the ALJ failed to give good reasons for the weight given. (Doc. 15, pp. 7-12).

According to the treating physician rule, an ALJ must give controlling weight to a treating physician's opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the treating physician's opinion is not entitled to controlling weight, the ultimate weight given must be determined by considering the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, whether the opinion is supported by medical evidence, whether the opinion is consistent with the record as a whole, the source's specialization, and any other relevant factors. *Id.* §§ 404.1527(c), 416.927(c). The ALJ must clearly articulate "good reasons" for the weight given to a treating physician's opinion, and these good reasons must be

supported by evidence in the record. *Id.* §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996).

The ALJ did not violate the treating physician rule. Controlling weight was not owed to Dr. McDonald's medical source statement because, as discussed below, it was inconsistent with substantial evidence in the record. The good reasons for the little weight given show the ALJ considered the appropriate factors when determining the weight owed. This decision is supported by substantial evidence.

The ALJ acknowledged Dr. McDonald was Plaintiff's primary care physician. (AR, p. 24). A summary of Dr. McDonald's treatment notes shows the ALJ was familiar with the length of the treatment relationship, the frequency of treatment, and the nature and extent of the treatment. (*Id.* at 22-24).

Dr. McDonald's opinion was not supported by the record. Dr. McDonald opined Plaintiff's functional limitations from leg numbness and weakness began as late as 2008. (*Id.* at 548). Yet, as of October 2011, Plaintiff was neurologically unremarkable. (*Id.* at 24). He displayed a full range of motion of the musculoskeletal system, and he was anxious but his mood and affect were normal. (*Id.*).

Nor was Dr. McDonald's opinion consistent with the record as a whole. At the same time Dr. McDonald submitted the medical source statement, Plaintiff was searching for employment, which showed his "impairments did not cause disabling functional limitations." (*Id.*). Even Plaintiff reported greater abilities than did Dr. McDonald. Whereas Dr. McDonald stated Plaintiff could only sit for twenty minutes at a time and stand for ten minutes at a time (*Id.* at 23), Plaintiff reported he could sit for thirty to thirty-five minutes and stand for twenty to twenty-five minutes (*Id.* at 24). Last, the ALJ correctly found no support in the record for Dr. McDonald's

opinion that Plaintiff would miss work four days per month. (*Id.* at 25). Dr. McDonald did not even explain the basis for this limitation in the medical source statement. (*Id.* at 548). *See* SSR 96-2p, 1996 WL 374188, at *1 ("A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion."); *Robbins v. Comm'r of Soc. Sec.*, No. 5:14-CV-13114, 2015 WL 3970127, at *11 (E.D. Mich. May 13, 2015), *report and recommendation adopted,* No. 14-13114, 2015 WL 3970133 (E.D. Mich. June 30, 2015) (upholding allocation of little weight to a treating physician's opinion that the claimant would miss more than four days of work each month where the limitation was inconsistent with the physician's mild treatment notes and the claimant's activities of daily living).

Dr. McDonald's medical source statement was not entitled to controlling weight, and the ALJ gave good reasons for giving the opinion little weight. Substantial evidence supports this conclusion.

## C. Licensed Psychological Counselor

Plaintiff claims the ALJ erred by failing to state the weight given to LPC Strickland's opinion evidence. (Doc. 15, pp. 7-12).[4] Plaintiff states, "Without an explanation, the Plaintiff is unable to discern whether NP Strickland's opinion was actually weighed." (Doc. 17, p. 2).

As a licensed psychological counselor, Strickland is not an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d) (eff. until Mar. 27, 2017). That being said, LPC Strickland's opinion is "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *3 (S.S.A. Aug. 9, 2006). Compared to the "good reasons" required to discount a treating physician's opinion, the explanation required for the treatment of opinions from other sources is less-demanding:

---
[4] Plaintiff incorrectly refers to LPC Strickland as a nurse practitioner and as "NP Moore."

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at *6.

The ALJ's treatment of LPC Strickland's opinion complied with SSR 06-03p. Review of the record shows the ALJ considered LPC Strickland's opinion that despite his sobriety Plaintiff's "mental health symptoms have a significant impact on the daily functioning for [Plaintiff], including his ability to concentrate, complete simple tasks, etc." (AR, p. 729). The opinion was discussed during the administrative hearing (*Id.* at 59-61) and in the ALJ's written decision (*Id.* at 24).

Plaintiff is correct that the ALJ did not explicitly state the weight given to this opinion. That, however, does not warrant reversal where the hearing testimony and written decision supply the context for declining to adopt the opinion. As the ALJ highlighted during the administrative hearing, LPC Strickland did not provide an RFC or otherwise identify what she meant by "significant impact." (*Id.* at 59-61). In addition to considering LPC Strickland's opinion (*Id.* at 24), the ALJ considered additional opinion evidence concerning Plaintiff's concentration, persistence, and pace. Dr. Doineau opined Plaintiff has mild limitations in understanding or remembering and sustaining concentration or pace. (*Id.* at 23). Noting that Plaintiff had reported watching television all day to Dr. Doineau, the ALJ explained, "It requires a certain level of concentration to watch television for an extended period." (*Id.* at 19). Dr. Galbraith found a moderate impairment in Plaintiff's ability to sustain concentration. (*Id.* at 23).

Dr. Tucker concluded Plaintiff could understand and remember for simple and low-level detailed tasks, and even though his pace and persistence were limited, he could sustain concentration and persistence for these tasks with customary breaks. (*Id.* at 24). Having considered the opinions in the record, the ALJ concluded Plaintiff has at most moderate difficulties with regard to concentration, persistence, or pace. (*Id.* at 19-20). He could perform simple, routine, repetitive tasks, and lower level detailed tasks, but not make executive level decisions. (*Id.* at 20). This conclusion is supported by substantial evidence, and the ALJ's discussion of LPC Strickland's opinion during the administrative hearing and in the written decision provides sufficient reasoning for not adopting LPC Strickland's opinion.

**D. Function-by-Function Assessment**

Last, Plaintiff argues the ALJ erred by failing to include a function-by-function RFC assessment pursuant to SSR 96-8p. (Doc. 15, pp. 13-14). Plaintiff states, "it is clear that the ALJ failed to include substantial limitations in the RFC finding correlating to symptoms and limitations which were well-documented in the record." (*Id.*).

This claim of error is a nonstarter. To determine a claimant's RFC, the ALJ performs a "function-by-function assessment" of the claimant's ability to perform work-related activities. SSR 96-8p, 1996 WL 374184, at *1, 3 (S.S.A. July 2, 1996). While the ALJ must evaluate the claimant on a function-by-function basis, the assessment itself does not need to be memorialized in writing. *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, No. 00-1995, at *4 (3d Cir. Dec. 19, 2000)). In the written decision, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* at 548 (quoting *Bencivengo*, No.

00-1995, at *5). An ALJ satisfies this obligation by explaining the claimant's exertional and nonexertional abilities. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013) (citing *Delgado*, 30 F. App'x at 547-48).

Here, the ALJ's RFC assessment is well-supported by a discussion of the record and a narrative of Plaintiff's exertional and nonexertional limitations. (AR, pp. 21-25). Further, Plaintiff's conclusory claim that the ALJ omitted well-documented, substantial limitations is waived. Plaintiff fails to specify which alleged impairments had which alleged impacts on his RFC. *See Moore*, 573 F. App'x at 543 (citing *Stewart*, 628 F.3d at 256); *Hollon ex rel. Hollon*, 447 F.3d at 490-91. This claim of error fails.

## VI. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that *Plaintiff's Motion for Judgment on the Administrative Record* (Doc. 14) be **DENIED** and the Commissioner's decision be **AFFIRMED**.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen days, after being served with a copy of this Report and Recommendation ("R&R") to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen days after being served with a copy thereof. Failure to file specific objections within fourteen days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985).

**ENTERED** this 6th day of June, 2017.

/s/ Joe B. Brown
JOE B. BROWN
UNITED STATES MAGISTRATE JUDGE